**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Soo Line Railroad Company,
a Minnesota corporation,

Plaintiff,

v.

Ashland, Inc., a Kentucky corporation, and
Murphy Oil USA, Inc., f/k/a/ Murphy
Corporation, a Delaware corporation

Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 01-1628 ADM/AJB

---

Ilsley Daniel Colton, Esq., and James G. Bullard, Esq., Leonard, Street & Deinard, P.A., Minneapolis, MN, appeared for and on behalf of Plaintiff.

John B. Gordon, Esq., Bruce G. Jones, Esq., and Delmar R. Ehrich, Esq., Faegre & Benson, L.L.P., Minneapolis, MN, appeared for and on behalf of Defendant Ashland, Inc.

Michael S. Ryan, Esq., Murnane, Conlin, White & Brandt, P.A., St. Paul, MN, appeared for and on behalf of Defendant Murphy Oil USA, Inc.

---

## I. INTRODUCTION

Defendant Ashland, Inc.'s ("Ashland") Motion for Partial Judgment on the Pleadings [Docket No. 90] and Defendant Murphy Oil USA's ("Murphy") (collectively, "Defendants") Motion to Dismiss [Docket No. 92], were argued before the undersigned United States District Judge on January 23, 2004. Defendants both move to dismiss Plaintiff Soo Line Railroad Company's ("Soo Line" or "Plaintiff") § 107 claim under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"). See 42 U.S.C. §§ 9601 et seq. Ashland additionally moves to dismiss Soo Line's claim for economic loss under the Minnesota Environmental Response and Liability Act ("MERLA"). See Minn. Stat. § 115B.05.

For the reasons explained below, Defendant Murphy's Motion to Dismiss Plaintiff's § 107 claim is denied, and Defendant Ashland's Motion for Partial Judgment on the Pleadings is denied as to Plaintiff's § 107 claim, but granted as to Plaintiff's economic loss claim under MERLA.

## II. BACKGROUND

This litigation concerns the parties' potential liability for hazardous waste cleanup under federal and state law.[1] Plaintiff alleges that Defendants' past business operations caused environmental contamination at the Shoreham Facility Lease Area Site ("Site"). Compl. ¶ 1. The Site consists of a 1.4 acre section of property along the west side of Central Avenue Northeast in Minneapolis, between 28th and 30th Avenues. Id. ¶¶ 1, 12. Plaintiff, who owned the Site during all times relevant to this litigation and remains the owner, leased the southern portion of the property to Defendant Ashland from March 1, 1973, through approximately October 1982. Id. ¶¶ 6, 11, 13. Plaintiff claims that Ashland operated a chemical tank farm where it imported, blended, stored, disposed of and released hazardous chemical products, and that these chemicals caused the contamination that is now the subject of this lawsuit. Id. ¶ 8. Defendant Murphy and its predecessors, who leased the Site's northern portion from around 1941 through 1986, allegedly operated a bulk oil storage facility, auto service stations and fueling facilities, and thereby released hazardous substances and other petroleum products and chemicals onto the property. Id. ¶¶ 9, 11, 15.

At the request of the Minnesota Pollution Control Agency("MPCA"), Plaintiff investigated the Site's contamination problem. Id. ¶ 17. Plaintiff alleges that the hazardous waste from Defendants' past activities contaminated the Site itself, and has also migrated off-site, polluting the surrounding land and

---

[1] For purposes of the instant Motion, the facts alleged in Plaintiff's Complaint [Docket No. 1] are taken as true. See United States v. Stoltz, 327 F.3d 671, 674 (8th Cir. 2003).

water. Id. ¶¶ 17-18. While the extent of contamination is currently uncertain, Plaintiff has placed the Site in the MPCA's Voluntary Investigation and Cleanup, and Voluntary Petroleum Investigation and Cleanup programs, and will continue to incur cleanup and investigative costs. Id. ¶¶ 19-20, 24. Plaintiff claims that it did not contribute to the contamination, and that at the time the pollution was occurring it had no knowledge of Defendants' activities that allegedly created the hazardous waste. Id. ¶ 21.

## III. DISCUSSION

Ashland moves for partial judgment on the pleadings, and Murphy moves to dismiss. A party may move to dismiss if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering motions to dismiss, courts construe the pleadings in the light most favorable to the non-moving party, and view the facts alleged in the complaint as true. See Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994). Courts must also draw all reasonable inferences in the non-moving party's favor. See United States v. Stoltz, 327 F.3d 671, 674 (8th Cir. 2003). A claim should be dismissed only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations. Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996); Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995) (citations omitted).

Defendants move first to dismiss Plaintiff's § 107 CERCLA claim, arguing that Plaintiff lacks standing to bring this action. Congress enacted CERCLA "to facilitate the cleanup of hazardous waste sites and to shift the costs of environmental response from taxpayers to the parties who benefitted from the use or disposal of the hazardous substances." Dico, Inc. v. Amoco Oil Co., 340 F.3d 525, 529 (8th Cir. 2003) (citations omitted). CERCLA defines the parties responsible for cleanup costs, known as potentially responsible parties ("PRP"s), as:

> (1) [T]he owner or operator of . . . [the] facility,
> (2) [A]ny person who at the time of disposal of any hazardous substance owned or operated . . . [the] facility . . .
> (3) [A]ny person who . . . arranged for disposal or treatment . . . of hazardous substances . . . at the facility . . ., and
> (4) [A]ny person who accepts . . . hazardous substances for transport to [the facility for disposal or treatment].

See 42 U.S.C. § 9607(a)(1)-(4).

CERCLA also delineates two mechanisms for cost-recovery actions by private parties. Section 107 allows direct recovery of "any . . . costs of response incurred by any . . . person consistent with the national contingency plan," and makes PRPs liable for paying these costs. 24 U.S.C. § 9607(a). However, § 107(b) exempts PRPs from liability if the damage resulting from contamination was due to: (1) an act of God; (2) an act of war; or (3) an act or omission of a third party other than one . . . [which] occurs in connection with a contractual relationship . . . ." 28 U.S.C. § 9607(b). Section 113(f) creates a contribution action for PRPs, stating that "[a]ny person may seek contribution from any other person who is liable or potentially liable under

[§ 107(a)] . . . ." 42 U.S.C. § 113(f). In distinguishing these two sections, most circuit courts, including the Eighth Circuit, have held that the express language in § 113(f) providing a right to contribution "implied an intent to limit PRPs to claims of contribution, and to preclude actions between PRPs for direct recovery." Dico, Inc., 340 F.3d at 530; see also N.J. Turnpike Auth. v. PPG Indus., Inc., 197 F.3d 96, 104 (3rd Cir. 1999); Axel Johnson, Inc. v. Carroll Carolina Oil Co., 191 F.3d 409, 415 (4th Cir. 1999); Bedford Affiliates v. Sills, 156 F.3d 416, 424 (2d Cir. 1998); Centerior Serv. Co. v. Acme Scrap Iron & Metal Co., 153 F.3d 344, 350 (6th Cir. 1998); Pinal Creek Group v. Newmont Mining Corp., 118 F.3d 1298, 1306 (9th Cir. 1997); Redwing Carriers, Inc. v. Saraland Apartments, 94 F.3d 1489, 1496 (11th

Cir. 1996); United States v. Colo. & E.R.R., 50 F.3d 1530, 1536 (10th Cir. 1995); United Techs. Corp. v. Browning-Ferris Indus., Inc., 33 F.3d 96, 101 (1st Cir. 1994); Azko Coatings, Inc. v. Aigner Corp., 30 F.3d 761, 764 (7th Cir. 1994); Amoco Oil Co. v. Borden, Inc., 889 F.2d 664, 672 (5th Cir. 1989). Thus, PRPs are normally limited to bringing contribution actions under § 113 unless they qualify for an exemption under § 107(b). See Dico, Inc., 340 F.3d at 531.

Some courts have created an exception to this general rule, however, and allow PRPs who are "innocent landowners" to bring § 107 claims against other PRPs. See Rumpke of Ind., Inc. v. Cummins Engine Co., Inc., 107 F.3d 1235, 1241-42 (7th Cir. 1997); Laidlaw Waste Sys., Inc. v. Mallinckrodt, Inc., 925 F. Supp. 624, 630-31 (E.D. Mo. 1996); Wolf Inc., v. L. & W. Serv. Ctr., Inc., No. 4:CV96-3099, 1997 WL 141685, at *6-8 (D. Neb. Mar. 27, 1997). Specifically, the Rumpke Court held that a landowner who claimed that it was not responsible for any contamination at a landfill site could assert a direct recovery action against other PRPs under § 107(a). Rumpke, 107 F.3d at 1241-42. In contrast, other courts have explicitly rejected the innocent landowner exception for PRPs, and have held that creating this judicial exemption would thwart CERCLA's underlying purpose. See Morrison Enters. v. McShares, Inc., 302 F.3d 1127, 1134-35 (10th Cir. 2002); Bedford Affiliates, 156 F.3d at 425 (2d Cir. 1998). Many other circuit courts have yet to explicitly address the innocent landowner exception, and are reserving judgment. See Dico, Inc., 340 F.3d at 532 (8th Cir. 2003); Axel Johnson, Inc., 191 F.3d at 416 (4th Cir. 1999); Centerior Serv. Co., 153 F.3d at 354 (6th Cir. 1998); OHM Remediation Servs. v. Evans Cooperage Co., Inc., 116 F.3d 1574, 1582 n.1 (5th Cir. 1997). While the Eighth Circuit has not definitively adjudicated the issue, dicta from the Dico decision suggests that this Circuit would not recognize an innocent landowner exception, but would instead limit PRPs to contribution actions under §

113 unless they qualified for a defense listed in § 107(b). See Dico, 340 F.3d at 531-32 (stating that CERCLA's plain language militates against adopting a judicially created exception for innocent landowners).

Defendants argue that Plaintiff lacks standing to seek direct recovery under § 107 because Plaintiff is a PRP under CERCLA. Plaintiff's status as a PRP is largely conceded by Plaintiff's averments in the Complaint. First, Plaintiff states that it currently owns the Site, and that it also owned the property when the allegedly contaminating activities occurred, making it a PRP under §§ 107(a)(1)-(2). See 42 U.S.C. § 9607(a); Compl. ¶¶ 6, 11. Second, Plaintiff cannot maintain a defense under § 107(b) because the pollution at the Site was not caused by an act of God or war, and the alleged acts that caused the contamination resulted from a contractual relationship between Plaintiff and Defendants, as the parties shared lease agreements. See 42 U.S.C. §§ 9601(35)(A), 9607(b); Compl. ¶¶ 13, 15, Exs. A1-A5, B1-B4. Third, Plaintiff does not qualify for an exception to contractual relationship liability because Plaintiff owned the Site throughout the period when the contaminating releases took place. See 42 U.S.C. § 9601(35)(A) (establishing an exception to CERCLA's definition of "contractual relationship" for landowners who acquired contaminated property after it was polluted by hazardous wastes); Compl. ¶ 11. Therefore, because Plaintiff is a PRP, it is limited to an action for contribution under § 113 unless it qualifies for an exception. See Dico, Inc., 340 F.3d at 530-31.

Plaintiff suggests that regardless of its possible status as a PRP, the Supreme Court's decision in Key Tronic Corp. v. United States, 511 U.S. 809 (1994), allows PRPs to recover response costs under both §§ 107 and 113. Id. at 816. Plaintiff's argument overstates the holding in Key Tronic, given the

plethora of circuit court case law, decided after Key Tronic, that limits PRPs to contribution actions under § 113. Dico, Inc., 340 F.3d at 530-31 (8th Cir. 2003); N.J. Turnpike Auth., 197 F.3d at 104 (3rd Cir. 1999); Axel Johnson, Inc., 191 F.3d at 415 (4th Cir. 1999); Bedford Affiliates, 156 F.3d at 424 (2d Cir. 1998); Centerior Serv. Co., 153 F.3d at 350 (6th Cir. 1998); Pinal Creek Group, 118 F.3d. at 1306 (9th Cir. 1997); Sun Co. v. Browning-Ferris, Inc., 124 F.3d 1187, 1190 (10th Cir. 1997); Redwing Carriers, Inc., 94 F.3d at 1496 (11th Cir. 1996). Further, the Eighth Circuit addressed a similar argument in Dico, and determined that Key Tronic did not involve the issue of whether a PRP may pursue an action for direct recovery against another PRP. Dico, Inc., 340 F.3d at 530-31. Consequently, Plaintiff may only sustain a § 107 claim if some exception applies.

Plaintiff alternatively argues that it may seek direct recovery under the innocent landowner exception because it allegedly knew nothing about Defendants' actions involving hazardous waste at the time they occurred. Plaintiff claims that the Eighth Circuit has yet to address the issue, and contends that dismissal at this early point of litigation is premature since the parties are still in the beginning stages of discovery, and will not face trial until July 2007. See Second Am. Scheduling Order of 11/07/03 ¶¶ 1, 7. Defendants argue that the innocent landowner exception is of dubious validity, and is unrecognized in the Eighth Circuit. Consequently, Defendants contend that Plaintiff's § 107 claim should be dismissed now.

While dicta from the Dico decision strongly suggests that the Eighth Circuit will not recognize the innocent landowner exception, the Dico Court specifically reserved judgment on this issue. Id. at 531-32. Therefore, this Court hesitates to either embrace or disavow the exception now when the Eighth Circuit may address it directly in the near future, perhaps before trial in this case. Additionally, discovery may reveal that Plaintiff is unqualified as an innocent landowner because it may have contributed to the pollution

in some way. As Defendants admitted during oral argument, dismissal of Plaintiff's § 107 claim will not alter the course of discovery. Thus, Defendants' Motions to Dismiss Plaintiff's § 107 claim are denied at this time.

Defendant Ashland also moves to dismiss Plaintiff's claim for economic relief under MERLA. Section 115B.05 of MERLA allows recovery of "all damages for economic loss" caused by the release of hazardous substances. However, parties are not liable for loss caused from hazardous materials that were "placed or came to be located in or on the facility wholly before July 1, 1983." Minn. Stat. § 115B.06.

Plaintiff's MERLA claim for economic relief against Ashland must be dismissed based on the plain language of § 115B.06. See id.; Soo Line R.R. Co. v. B.J. Carney & Co., 982 F. Supp. 1365, 1367-68 (D. Minn. 1997) (Tunheim, J.); City of Minneapolis v. Arkla, Inc., No. 4-91-CV-441, 1993 WL 61827, at * 2 (D. Minn. Feb. 18, 1993) (Rosenbaum, J.). Ashland's lease with Plaintiff expired around October 1982 and Ashland's operations on the Site ceased at this time. See Compl. ¶¶ 7, 13-14. Consequently, any hazardous substances attributable to Ashland would have been placed or located on the Site or facility prior to July 1, 1983. Therefore, Plaintiff cannot sustain a MERLA claim for economic damages against Ashland.

Plaintiff's arguments against dismissal are unpersuasive. First, while Plaintiff suggests that Ashland may have disposed of hazardous materials on the Site after ceasing its operations in 1982, Plaintiff does not allege facts supporting this contention in the Complaint, nor offer any evidence of such activity. Further, because the claim is dismissed without prejudice, Plaintiff may reassert it against Ashland should discovery reveal that Ashland either placed or located hazardous waste on the Site after July 1, 1983. Second, Plaintiff's facility-to-facility argument ignores the legislative intent behind § 115B.06, which was

"clearly intended to cut off liability for past actions." See Werlein v. United States, 746 F. Supp. 887, 910 (D. Minn. 1990) (Tunheim, J.), vacated in part on other grounds, 793 F. Supp. 898 (D. Minn. 1992). Plaintiff's argument essentially renders the exception meaningless, as plaintiffs could characterize any portion of a contaminated site as a "facility," and then claim the pollution at that specific facility occurred after July 1, 1983, even when potential defendants had no contact with the site past this date. Therefore, Ashland's Motion for Partial Judgment on the Pleadings is granted on Plaintiff's claim for economic relief under MERLA.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Murphy Oil USA's Motion to Dismiss [Docket No. 92] is **DENIED**,

2. Defendant Ashland, Inc.'s Motion for Partial Judgment on the Pleadings [Docket No. 90] is **DENIED** as to Plaintiff's § 107 claim,

3. Defendant Ashland, Inc.'s Motion to Dismiss Plaintiff's MERLA claim for economic relief against Ashland [Docket No. 90] is **GRANTED**. The claim is **DISMISSED WITHOUT PREJUDICE**.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: March 16, 2004.