G 165

Minnesota Pollution Control Agency

CERTIFIED MAIL

RETURN RECEIPT REQUESTED

SOO LINE RAILROAD
RECEIVED
DEC 11 1979
OFFICE OF
CHIEF ENGINEER

DEC 07 1979

Mr. B. E. Pearson, Chief Engineer
Soo Line Railroad Company
Soo Line Building
Box 530
Minneapolis, Minnesota 55400

Dear Mr. Pearson:

Enclosed is a Stipulation Agreement for your consideration which we believe reasonably sets out conditions that the Soo Line Railroad Company can follow up in order to comply with Minnesota Water Quality Regulations.

Stipulation Agreements are meant to settle matters between the Agency and other parties prior to and in lieu of escalation to a litigation status. The proposed Stipulation Agreement represents a settlement position relative to numerous spills of oil and hazardous materials from January 1, 1978 to November 4, 1979 which our staff is willing to recommend to the Agency Board. You are under no requirement to discuss settlement of this matter with the staff and have the opportunity to present your position to the MPCA Board before this matter proceeds further. If, however, you can accept the staff proposal or desire additional discussions, please so indicate at your earliest convenience.

Please sign all three copies and return them to the Agency by January 15, 1980. If you have any questions, please contact me at 612-296-7709.

Sincerely,

Bruce S. Davis

Bruce S. Davis
Spills Unit
Division of Water Quality
Compliance and Enforcement Section

EB

BSD:dc

cc: Tim Musick, MPCA, Duluth

DEPOSITION EXHIBIT 089

1935 West County Road B2, Roseville, Minnesota 55113
Regional Offices • Duluth / Brainerd / Detroit Lakes / Marshall / Rochester / Roseville
Equal Opportunity Employer

SLR061963

EXHIBIT 21

MINNESOTA POLLUTION CONTROL AGENCY

WATER QUALITY STIPULATION AGREEMENT

In the Matter of
Soo Line Railroad Company Spills

A. Recitals

1. Parties. The parties to this Stipulation Agreement are the Minnesota Pollution Control Agency, hereinafter referred to as the Agency, and the Soo Line Railroad Company, hereinafter referred to as the Company.

2. Company Operations. The Company is involved in transportation, storage and distribution of oil and hazardous materials in the State of Minnesota.

3. Agency Authority. The Agency is a statutory agency of the State of Minnesota responsible for administering and enforcing all laws and regulations relating to the pollution of any of the waters of the state. This authority is specifically described in Minnesota State Statutes, Chapters 115 and 116, 1978.

4. Relevant Statutes and Rules. Minnesota Statute Section 115.061 (1978) prescribes the duty of persons to notify the Agency immediately of the discharge of any material under their control which, if not recovered, may cause pollutions of waters of the state, and to immediately take such action as may be possible to minimize or abate such pollution. Minnesota Rule WPC 14(c)(2) provides that no sewage, industrial waste, or other wastes shall be discharged into any interstate waters so as to cause nuisance conditions or other offensive or harmful effects. Minnesota Rule WPC 22(d)(2) provides that no waste or other pollutants shall be discharged to the unsaturated zone in such a manner that they may pollute the underground waters.

5. Company Spills. The Company had the following spills in Minnesota from January, 1978 through November 4, 1979:

a. January 29, 1978 — Approximately 150 tons of Potash were spilled from a railcar near Maple Lake. Spill occurred on January 29, 1978 but was not reported to the Agency until January 31, 1978. Clean up completed in April, 1978.

CA-9

b. April 15, 1978 — Approximately 100 gallons of diesel fuel was lost to the ground when a hose broke during refueling in Minneapolis. The spill occurred April 15, 1978, at 7:00 a.m. and reported to the Agency at 10:15 a.m.

c. April 24, 1978 — An undetermined quantity of activated carbon was spilled near Noyes. The incident was reported to the Agency on April 25, 1978.

CA-21

d. April 25, 1978 — Approximately 100 gallons of diesel fuel was lost to the ground when a hose broke at the Minneapolis fueling station. The spill occurred April 25, 1978, at 9:00 a.m. and reported to the Agency at 11:40 p.m.

no record

e. August 23, 1978 — Approximately 2000 gallons of diesel fuel was lost during a train derailment near Denham. Recovery and clean up of spilled material was not accomplished for two-three weeks after spill occurred. The spill was reported to the Agency on

CA-47

?

| | | |
|---|---|---|
| k. | December 30, 1978 | 2 tons of Potash was lost as a result of a train derailment near Alexandria. The incident was reported to the Agency on January 4, 1979 by the Department of Agriculture. |
| l. | January 9, 1979 | 2800 gallons of diesel fuel was spilled when an engine fell off a roundtable in Glenwood. The spill to the ground could have been prevented by blocking a floor drain. The incident occurred on January 9, 1979 at 2:30 p.m. and was reported to the Agency on January 10, 1979, at 3:40 p.m. |
| m. | January 9, 1979 | 200 gallons of diesel fuel was lost to the sanitary sewer in Minneapolis. An engine was being repaired at the time. The incident occurred at 4:30 a.m. on January 9, 1979 and reported to the Agency on January 9, 1979, at 12:30 p.m. |
| n. | March 11, 1979 | 10 tons of Potash was spilled when a train derailed near Sedan. The Agency was notified of the spill on March 22, 1979 by the Department of Agriculture. Small amounts of Potash remained on the ground as late as April 9, 1979. |
| o. | May 16, 1979 | 1 ton of Potash was spilled when a train derailed in Plymouth. The spill was not reported to the Agency by the Company. |

p. July 26, 1979 — 200 gallons of diesel fuel was allowed to flow onto the ground when several cars were cleaned out near the transfer table in Minneapolis. This spill was not reported to the Agency.

q. July 26, 1979 — An unknown quantity of #2 fuel oil was lost as a result of an underground tank in Minneapolis. The leak was reported to the Company by the Agency on July 26, 1979 as the result of a complaint received from an employee. The Company conducted soil borings on October 19, 1979 and verified the tank leak at that time.

r. August 13, 1979 — 800 gallons of diesel fuel was spilled when an engine was overfilled in Minneapolis. The spill was reported to the Agency on August 13, 1979 at 11:00 a.m.

s. September 4, 1979 — 100 gallons of diesel fuel was spilled when a fuel line on an engine ruptured in Duluth. The spill was reported on September 4, 1979 at 11:55 a.m. shortly after the incident occurred.

t. November 4, 1979 — 2500 gallons of diesel fuel was spilled at Moose Lake when a train derailed. As a result of the Company's delay in action the Moose River became contaminated. Recovery of oil commenced two days after spill occurred.

The Agency alleges that the following spills were not reported to the Agency by the Company as required by Minnesota Statute 115.061:

| | |
|---|---|
| January 29, 1978 | January 9, 1979 |
| April 24, 1978 | March 11, 1979 |
| November 30, 1978 | May 16, 1979 |
| December 18, 1978 | July 26, 1979 |
| December 30, 1978 | July 26, 1979 |

The Agency further alleges that petroleum distillates discharged as a result of a Company spill of November 14, 1979, entered surface waters of the state causing an oil slick and obnoxious odors in violation of Minnesota Rule WPC 14.

The Agency further alleges that petroleum distillates discharged in fifteen spills entered the unsaturated zone and actually or potentially polluted underground waters in violation of Minnesota Rule WPC 22.

6. Payment to State. The Agency seeks a monetary compensation for the spills described in paragraph A.5. of this Stipulation Agreement, including staff expenses for investigation of these incidents.

7. Purpose of Agreement. The purpose of this Stipulation Agreement is to resolve and to settle the violations of Minnesota Statutes and Rules relating to the Company's past spills.

B. Agreement

NOW, THEREFORE, for the purpose of achieving settlement of the claims of the parties to this Agreement, it is hereby agreed and stipulated as follows:

1. Company.

a. Spill Contingency Plan. The Company agrees to write and submit, by March 1, 1980, a product spill Contingency Plan that is satisfactory to the Agency which shall include,

but not necessarily be limited to, the following:

1) Names and telephone numbers of the state authorities to be notified when a spill occurs, including the Agency's 24-hour telephone number.

2) Names and telephone numbers of Company officials responsible for spill response and clean up.

3) Materials and manpower available for containment and clean up of spills, including a list of contractors who will be contacted in the event of a large spill.

4) Instructions to employees regarding deployment of materials and manpower, priority of spill response activities and communication with state authorities.

5) Provisions for a final written report on a spill to be submitted to the Agency.

b. Penalty Payment. The Company agrees to pay into the Treasury of the State of Minnesota as a civil penalty the sum of thirty-five thousand five hundred sixty dollars ($35,560) for the violations that occurred. This payment will be submitted to the state within forty-five (45) days of the effective date of this Stipulation Agreement.

2. Agency.

a. Claims Against Company. In consideration of the Company's performance of the terms, covenants, and agreements contained herein, and in further consideration of payment by the Company in the amount provided herein, the Agency agrees that this Stipulation Agreement shall stand in lieu of any

administrative, legal or equitable remedies available to the Agency and shall release the Company, its successors and assigns, from any and all claims or causes of action which the Agency may have regarding any alleged violations of Minnesota statutory or regulatory provisions described in paragraph A.5. of this Stipulation Agreement for as long as the Company is in compliance with the terms and conditions of the Stipulation Agreement.

3. General Conditions. The Agreement of the parties are subject to the following general conditions:

a. Remedies of the Parties. It is intended that the terms of this Stipulation Agreement shall be legally enforceable by either party in a court of competent jurisdiction and each of the parties retains the right to assert any legal, equitable or administrative right of action or defense which may be available by law in order to implement or enforce the terms of this Stipulation Agreement.

b. Liability and Obligation. This Stipulation Agreement shall not release the Company from any liability or obligation imposed by Minnesota Statutes, Regulations or local ordinances now in effect or which may hereafter be adopted except as specifically set forth herein. Specifically, nothing herein shall prevent the further adoption of any water pollution control regulations, standards, statutes, or orders based thereon more stringent as applied to the Company than those now in existence.

c. Emergency Powers. Nothing in this Stipulation Agreement shall prevent the Agency from exercising emergency powers pursuant to Minnesota Statutes Section 116.11 in the event conditions warranting such action should arise.

d. Effective Date. This Stipulation Agreement shall be effective upon the date it is signed by an authorized representative of the Company and the Executive Director of the Agency and the Chairman of the Agency Board.

e. Company Information. The Company shall not knowingly make any false statement, representation, or certification in any record, report, plan or other document filed or required to be submitted to the Agency under this Stipulation Agreement. The Company shall immediately report to the Agency any errors in such records, reports, plans, or other documents upon discovery.

f. Future Pollution - Remedial Action. The Company shall implement reasonable and feasible remedial actions or measures that are necessary to monitor, eliminate or abate petroleum distillate pollution or hazardous material pollution or contamination threats to waters of the state which may be determined or discovered in the future to have originated from the Company's operation prior to January 1, 1978.

g. Successors. This Stipulation Agreement shall be binding upon the Company, its successors and assigns, and upon the Agency, its successors and assigns.

h. Amendment. The Agency and the Company by mutual agreement may amend this Stipulation Agreement.

i. Termination. This Stipulation Agreement shall terminate on July 1, 1982.

SOO LINE RAILROAD COMPANY

BY ______________________________

DATE ______________________________

MINNESOTA POLLUTION CONTROL AGENCY

BY ______________________________
Art Engelbrecht, Chairman

DATE ______________________________

BY ______________________________
Terry Hoffman
Executive Director

DATE ______________________________