# Superfund Memorandum Of Agreement

EXHIBIT 54

SUPERFUND MEMORANDUM OF AGREEMENT

Table of Contents

I. INTRODUCTION -- PURPOSE

A. Introduction

B. Purpose

II. AGREEMENT

A. State Point of Contact

B. Site Specific Designation of Lead/Support Agency

C. SRPM/ERPM Designations

D. Points of Contact

1. Overall Program Communications, Coordination and Planning

2. Cooperative Agreement/Superfund State Contract Coordination

3. SRPM/ERPM Interaction/Responsibilities

E. Planning/Coordination Process

1. Annual Planning/Evaluation Process

2. Superfund Comprehensive Accomplishments Plan (SCAP)

3. Ongoing Program Coordination

4. Non-Site-Specific Documents

5. Community Relations and Technical Assistance Grants (TAGS)

F. Removal Actions

1. Notification

2. Lead Agency Designations

3. Assurance - Post-Removal Site Control

G. Enforcement

H. Federal Facilities

Table of Contents
Page 2

I. Processes

1. Applicable or Relevent and Appropriate Requirements/To Be Considered (ARARs/TBCs) Process

2. Administrative Record Process

3. Quality Assurance Project Plan (QAPP) Approval Process

J. Consultation, Agreement and Concurrence Process

1. NPL Listing

2. Draft RI/FS and Proposed Plan

3. Concurrence on Lead Agency RODs

4. Five-Year Review

5. NPL Deletion

K. Support Agency Site-Specific Review/Oversight

L. Resolution of Disputes

---

ATTACHMENTS

Attachment I -- Superfund Site Status Report

Attachment II -- Minnesota NPL Sites, Site Status Report, FY94

Attachment III -- Fund Financed Sites, Oversight and Review List

Attachment IV -- State Lead, Enforcement Sites

Attachment V -- Site Enforcement Strategies (CONFIDENTIAL)

Fund Financed Sites
Oversight and Review List

| Information Exchange | Lead Agency | Support Agency Action | Time Frame |
|---|---|---|---|
| PA Reports (not required) | State | Review/File | 30 calendar days |
| SI Workplans | State | Review/Comment | 10 calendar days |
| SI Reports | State | Review/Comment | 30 calendar days |
| ESI Workplans | State | Review/Comment | 10 calendar days |
| ESI Reports | State | Review/Comment | 30 calendar days |
| NPL Briefing Memos | State | Review/Comment | 10 calendar days |
| HRS II Scoring | EPA | State: Review/Concur | 30 calendar days |
| | State | EPA: Review/Concur | 30 calendar days |
| RI (Draft) | EPA/State | Review/Comment | 30 calendar days |
| RI (Final) | EPA/State | Review/Concur | 10 calendar days |
| FS | EPA/State | Review/Concur | 30 calendar days |
| Alternatives Array/ ARARs Identified | EPA/State | Submit potential ARARs and TBCs | 30 calendar days after RI approval |
| Proposed Plan (Draft) | EPA | State: Review/Concur | 30 calendar days after FS approval |
| | State | EPA: Review/Concur | 30 calendar days after FS approval |
| Proposed Plan (Final) | EPA | State: Review/Concur | 30 calendar days |
| | State | EPA: Review/Concur | 30 calendar days |
| Record of Decision (Draft) | EPA/State | Review/Comment | 30 calendar days |
| Record of Decision* (Final) | EPA/State | Review/Concur | 30 calendar days |

| Information Exchange | Lead Agency | Support Agency Action | Time Frame |
|---|---|---|---|
| Community Relations Plan (Draft & Final) | EPA<br>State | State: Review/Comment<br>EPA: Review/Concur | 30 calendar days<br>30 calendar days |
| Final RD (interim & 95% complete) (Bids/Specs) | EPA/State | Review/Comment | 20 calendar days<br>20 calendar days |
| Remedial Action Report Joint Inspection Memorandum | EPA/State | Review/Comment | 20 calendar days after acceptance of the final construction report (EPA RA report) |
| O & M Plan | EPA/State | Review/Concur | 30 calendar days |
| Close-Out Report | EPA<br>State | State: Review/Comment<br>EPA: Review/Concur | 30 calendar days<br>30 calendar days |
| Deletion Initiation | EPA | State: Review/Concur | 30 calendar days |
| Five Year Review Statement of Work | EPA/State | EPA/State: Review/Comment | 15 calendar days |
| Five Year Review Document | EPA/State | EPA/State: Review/Comment | 30 calendar days |
| Cooperative Agreement Pre-Applications | State | EPA: Review/Comment | 15 calendar days |
| Final Cooperative Agreement Applications | State | EPA: Review/Concur | <90 calendar days |
| Draft Superfund State Contract | EPA | State: Review/Comment | 30 calendar days |
| Final Superfund State Contract | EPA | State: Sign and return 1 of 2 copies to EPA | 30 calendar days |

*Record of Decision amendments will be reviewed the same as the final Record of Decision

Dated: DEC 0 2 1994

Superfund Memorandum of Agreement

The Minnesota Pollution Control Agency and the United States Environmental Protection Agency, Region V, hereby enter into the following Superfund Memorandum of Agreement.

I. INTRODUCTION - PURPOSE

A. Introduction

This Superfund Memorandum of Agreement (SMOA) is entered into by the United States Environmental Protection Agency, Region V (EPA), and the State of Minnesota (State) by its Pollution Control Agency (MPCA), collectively, "the Parties" pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA or Superfund), as amended, and the National Oil and Hazardous Substances Pollution Contingency Plan (NCP). This SMOA also recognizes the responsibilities vested in the MPCA for implementation of a State Superfund program under the Minnesota Environmental Response and Liability Act (MERLA) Minn. §§115B.01 to 115B.24 and attendant regulations. To the extent this SMOA conflicts with 40 CFR Part 35 or the NCP, 40 CFR Part 35 and the NCP shall be the governing documents.

This agreement is intended to apply only to the State and EPA. It does not create any rights for or duties of any party, including potentially responsible parties, not signatory to this agreement. Nothing contained in this SMOA shall be construed either expressly or by implication to make EPA or the State the other's agent.

B. Purpose

The SMOA delineates the respective roles and responsibilities of each party as they relate to the conduct of a Superfund program to clean up hazardous waste sites in the State. Specifically, the purposes of the SMOA are to:

1. Establish the MPCA/EPA relationship with respect to Superfund programmatic activities in order to maintain a cooperative working relationship that best serves the parties' interests and the objectives of CERCLA and MERLA.

2. Define the process to designate the "lead agency", the State Remedial Project Manager (SRPM), and the EPA Remedial Project Manager (ERPM) for each National Priorities List (NPL) site in Minnesota and the State Cooperative Agreement Coordinator (SCAC) and EPA Regional Project Officer (PO).

3. Define the process to designate NPL sites for which the support agency will be requested to concur on the lead agency's selected and recommended remedy.

4. Establish procedures for close cooperation and communication between the Parties in planning for response activities (annual planning process) so that the annual planning process will lead to optimal use of the Parties' resources, minimizing conflicts and duplication of effort in conducting site-specific response activities.

5. Establish the base level for review and oversight of site-specific response process technical deliverables, reports, studies or other pertinent materials and documents. Establish base level communication necessary to achieve the optimum program.

6. Set the general framework for the MPCA/EPA relationship, so that site-specific MPCA/EPA communication is enhanced.

7. Assure that response activities are conducted at NPL sites in a manner consistent with CERCLA, the NCP, MERLA and other applicable State and Federal laws and regulations.

## II. AGREEMENT

NOW, THEREFORE, IT IS AGREED THAT:

A. State Point of Contact

The MPCA is the lead State agency for Superfund program activities, at selected NPL sites pursuant to the NCP. The MPCA will be the State's point of contact with EPA for all Superfund site response. The Minnesota Department of Health, Minnesota Department of Agriculture, Minnesota Department of Natural Resources, and the Minnesota Attorney General's Office are State agencies that may have some role in response and with whom the MPCA will coordinate.

B. Site Specific Designation of Lead/Support Agency:

As of the effective date of this SMOA, the MPCA is the designated lead agency for remedial activities at selected NPL and all non-NPL sites including voluntary investigation and cleanup sites in the State of Minnesota. The MPCA and EPA will agree on the lead agency role for any new sites that have a high potential for listing on the NPL prior to listing.

Lead agency designation for NPL sites may be reviewed at any point in the response process. There may be a need to switch the lead agency designation during the life of a site cleanup because of changing conditions such as funding needs or enforcement determinations. The switch in lead agency designation will be by mutual consent of the Parties to the greatest extent practicable. If EPA becomes the lead agency, the Parties intend to review and modify the appropriate sections of this SMOA to reflect the EPA as the lead agency and the MPCA as the support agency. The most logical and reasonable points for a change in the lead agency are prior to initiating the Remedial Investigation/Feasibility Study (RI/FS) and after Record of Decision (ROD) concurrence, but before the beginning of Remedial Design (RD) to maintain project continuity. The MPCA intends to maintain the lead agency role on the majority of Minnesota NPL sites through completion of the Remedial Action (RA) and long-term monitoring if required.

The lead and support agency designations for all Minnesota NPL sites are set forth in Attachment 2 to this SMOA.

C. SRPM/ERPM Designations

The MPCA will designate a SRPM and the EPA will designate an ERPM whenever a site is determined to have a high potential for listing on the NPL. The MPCA will identify potential sites for inclusion on the NPL and will initiate the SRPM/ERPM designation process.

The SRPM/ERPM designations for current Minnesota NPL sites are set forth in Attachment 2 to this SMOA. Attachment 2 will be updated annually in the second quarter of each Federal fiscal year by the Parties.

D. Points of Contact

1. **Overall Program Communication, Coordination, and Planning.**

The State Superfund Division Director and EPA, Region V, Associate Division Director, Office of Superfund, are responsible for overall program communication and coordination. They will meet during the third quarter of each Federal fiscal year to track progress of the SMOA and to discuss issues that have arisen during implementation of the SMOA.

MPCA Key Contacts

The Key MPCA contacts for all State/EPA Superfund coordination, program communication and planning are:

| Primary | Secondary |
|---|---|
| James L. Warner, P.E.<br>State Superfund Division Director<br>Ground Water and Solid Waste Division<br>(612) 296-7777 | Richard Sandberg<br>Section Manager<br>Site Response Section<br>Ground Water and Solid Waste Division<br>(612) 296-7290 |

EPA Key Contacts

The Key EPA contacts for all State/EPA Superfund coordination, program communication and planning are:

| Primary | Secondary |
|---|---|
| Jo Lynn Traub<br>Associate Division Director<br>Office of Superfund<br>(312)353-9773 | Joseph Duffìcy, Chief<br>Minnesota/Ohio (MN/OH) Remedial Response Branch<br>(312)886-7255<br><br>Richard Karl, Chief<br>Emergency Response Branch<br>(312)886-6236 |

2. Cooperative Agreement/Superfund State Contract Coordination.

State Cooperative Agreement Coordinator: The SCAC is the primary liaison with the EPA PO.

The SCAC:

a. Coordinates yearly and quarterly Superfund Comprehensive Accomplishments Plan (SCAP)/Site Summary Report (SSR) development to ensure adequate and accurate planning coordination with EPA.

b. Coordinates draft and final application for and administration of all Cooperative Agreements (CA) between the Parties.

c. Reviews for compliance and transmits to the PO quarterly technical and financial progress reports as required by the CAs.

d. Coordinates State activities regarding resolution of program or CA audits.

e. Coordinates with EPA the tracking of all work products under CAs to ensure documentation of compliance with the CAs or the appropriate amendment of the CA.

EPA PO:

a. Coordinates EPA review of all draft and final applications for CAs and amendments and monitors all State CAs.

b. Coordinates with SCAC, ERPM and others within EPA to ensure adequate and accurate planning coordination with the State related to State-lead projects under CAs.

c. Receives notice from MPCA of all work products under CAs to ensure compliance with the CAs and documentation of that compliance.

d. Receives and coordinates review of all quarterly technical and financial progress reports as required by the CAs.

e. Coordinates EPA Superfund program activities regarding resolution of CA audits.

f. Coordinates negotiation of EPA Superfund State Contracts (SSCs) for any remedial action projects designated as "Federal-lead" projects.

3. SRPM/ERPM Interaction/Responsibilities

Interaction

The main route of communication and resolution of site-specific technical issues will be through the lead and support agency designated SRPMs and ERPMs.

Responsibilities

The Lead Agency RPM will:

a. Coordinate all technical and enforcement activities.

b. Develop technical scopes of work and budget estimates for each assigned site to accomplish site cleanup within the specified time frames.

c. Take the lead in drafting enforcement documents.

d. Coordinate with site team reviews of RI/FS and recommend site remedial action(s).

e. Develop the ROD with site team.

f. Coordinate the following tasks at State-Lead sites which shall be reviewed by the SCAC for compliance with applicable provisions of CAs and other regulations, guidance, and policy:

(1) Take lead in drafting, revising, and negotiating CA applications.

(2) Implement Fiscal Tracking System and maintain adequate fiscal reports and financial records for each CA.

(3) Coordinate tasking of Multi-Site contractor for assigned sites in accordance with time frame specified in CAs. This will include developing the scope of work, and ensuring that the contractors conform with applicable State and Federal procurement rules and regulations.

g. Coordinate with appropriate staff to ensure adequate and timely resolution of SCAP budgeting and fiscal issues.

h. Coordinate with appropriate staff to assure adequate progress is made pursuant to the developed SCAP.

The Support Agency RPM will:

a. Act as that Agency's point of contact for all technical and enforcement issues.

b. Receive, review, comment and consult on technical aspects of submittals according to the event schedule in Attachments 3 and 4.

c. Coordinate with appropriate staff to ensure adequate and timely resolution of SCAP budgeting and fiscal issues.

d. Coordinate with appropriate staff to assure adequate progress is made pursuant to the developed SCAP.

e. Assist in ROD development and coordinate review for ROD concurrence, as appropriate.

E. Planning/Coordination Process

1. **Annual Planning/Evaluation Process**

The main route of communication in the annual planning/evaluation process will be through the State Superfund Division Director and the EPA, Region V, Associate Division Director, Office of Superfund. However, primary communication on CA and SCAP issues will be through the SCAC and PO or Chief, MN/OH Response Sections, after consultation with the site-specific SRPMs and ERPMs.

a. The SMOA and appropriate attachments may be updated at any time by the mutual consent of both Parties.

b. In the second quarter of each Federal fiscal year the MPCA will submit to EPA the planned SCAP and Strategic Targeted Activities for Results System (STARS) targets which are a subset of SCAP targets, for the upcoming fiscal year.

c. Joint Program Reviews by the Parties will be held twice a year in May (mid-year) and December (year-end).

2. **Superfund Comprehensive Accomplishments Plan (SCAP)**

a. Planning Sessions: Planning sessions will be scheduled between ERPMs and SRPMs to plan and coordinate State-Federal activities for the upcoming fiscal year. Planning meetings will be scheduled by the Lead Agency RPM and held no later than December 31 of each fiscal year. Planning meetings will include discussions and/or negotiations of the following items:

- The goals and objectives of the Parties for the coming fiscal year
- MPCA/EPA resources (staffing, dollars, workload)
- MPCA/EPA SCAP projections including support service funding
- CAs/SSCs
- Schedules and milestones including SCAP/SSR targets for deliverables
- Enforcement lead site issues
- Implementation hurdles:
  *site-specific
  *administration
  *procedural
  *communications
  *SMOA

Results of these planning sessions may include:

- Commitments/targets (both State and Federal)
- Schedules for deliverables
- Amendments to the SMOA or CAs

b. Mid-year reviews: The purpose of the mid-year review is to assess progress made by the Parties in meeting work projections and commitments established during the planning sessions, establish corrective action for follow-up items as necessary, and adjust projections/commitments as necessary. The mid-year review would attempt to:

- Review progress made during the first two quarters
  - *commitments
  - *projections
  - *schedules
- Identify deviations, problems, etc.
- Establish corrective action for follow-up items
- Adjust projections, commitments, and deliverables, if appropriate and only after consultation with the SRPM and ERPM
- Set direction for remainder of the fiscal year

Results of the reviews may include:

- Written evaluation of accomplishments, shortfalls, and deviations
- Recommendation of amended and/or adjusted commitments in the SCAP or CA/SSC to the SRPM and ERPM

c. Year-end Reviews: The purpose of the year-end review is to conduct performance reviews similar to the mid-year review.

3. Ongoing Program Coordination

Communication - MPCA and EPA Superfund program representatives will meet at least twice a year per E.1.c. above to establish and maintain open communication between staff and to develop a rapport between the Parties to ensure ongoing and continuous program coordination. Topics of discussion will include an exchange of overall program status.

The SRPMs and ERPMs will meet no later than December 31 of each fiscal year to review the SCAP/SSR targets for the next fiscal year as noted in E.2.a. Topics of discussion will include a detailed site-specific discussion and update of each Minnesota NPL Site. The meeting should also include a site visit.

In addition, EPA and State Program representatives (EPA Section Chief, ERPM and MPCA Site Team and Unit Supervisor) will engage in telephone conference calls on a bimonthly basis or more often as needed. These calls will provide opportunity to discuss ongoing and upcoming activities, to discover and resolve problems between the two Parties, and to maintain open communication.

The Parties agree to work together to achieve the ability to exchange Superfund program status information through the use of the Region V data base system.

4. Non-Site-Specific Documents

The EPA PO and the Remedial Response Branch Chief are responsible for providing the SCAC with copies of all non-site-specific EPA guidance, policy, regulations, and laws that are made available to the Project Officer and are relevant to Superfund activities.

The SCAC is responsible for providing the EPA PO with copies of all non-site-specific State guidance, policy, regulations and laws that are relevant to Superfund activities.

5. Community Relations and Technical Assistance Grants (TAGs)

a. A wide variety of agencies and groups including cities, counties, interested and/or affected citizens, environmental groups, governmental officials and the media, must be informed and given meaningful opportunities for involvement in the decision-making process during the investigation and cleanup of a Superfund site.

In their public statement the Parties will always endeavor to speak from a unified position.

b. The preparation of press releases and contacts with the media are the responsibility of the Lead Agency unless other arrangements have been made by mutual consent of the Parties. In certain instances, if agreed to by the Parties, the MPCA Public Information Office will take the lead on preparing and issuing press releases even though EPA is the Lead Agency. It is the responsibility of the Lead Agency to notify the Support Agency concerning community relations activities. Press releases should be scheduled in advance when practicable. For all press releases, the non-issuing agency will be asked to comment prior to release, and copies of the final document will be provided for their files. Press releases will acknowledge the non-issuing agency's role whenever appropriate.

c. The Lead Agency will chair all public meetings. The SRPM and ERPM will be provided the opportunity to attend and participate in all public meetings.

d. Unless the State specifically requests the lead, the EPA will administer TAGs, if such grants are applied for.

e. The MPCA will be responsible for providing information to EPA pursuant to Freedom of Information Act requests and controlled correspondence, in as timely a manner as possible.

f. The EPA will be responsible for coordinating health assessment information with Agency for Toxic Substances & Disease Registry (ATSDR). The MPCA will furnish site-specific information as requested.

g. The MPCA will be responsible for coordinating health assessment information with the Minnesota Department of Health on all sites.

F. Removal Actions

This article specifies the procedures that will be followed regarding notification, consultation, and negotiation of MPCA assurances for removal actions.

1. Notification

The MPCA is typically the Lead Agency for conducting removal actions in Minnesota. If the EPA is notified of a release or other incident which might require a removal action it will notify the MPCA. The MPCA may request technical and/or enforcement assistance if it is unable to adequately respond due to limitations on resources or authority. If the State is unable to respond, EPA will respond if the criteria for removals in the NCP are met. The EPA reserves the right to become the Lead Agency to respond to major emergency releases or major incidents at any time. Notifications on removal actions will be the responsibility of the EPA Emergency and Enforcement Response Branch and the Section Manager of the MPCA Site Response Section.

2. Lead Agency Designations

For fund-financed sites, the MPCA is the Lead Agency for non-time critical removal actions and EPA is the Lead Agency for time critical removal actions. The Lead Agency for removal actions on enforcement sites will be determined on a site by site basis depending on which party is the Lead Agency for other response actions and availability of resources and enforcement authorities. For non-time critical and state lead enforcement removal actions, the MPCA will first seek federal funds through a Removal Action Cooperative Agreement. If federal funds cannot be obtained, the MPCA will use State Superfund monies as available.

3. Assurance - Post-Removal Site Control

Federal removal actions are limited to a duration of 12 months. No EPA-funded removal work that will result in a need for post removal site control shall be initiated until a written agreement is reached with the MPCA. The MPCA may enter into written agreements with other State or local governmental entities to perform post removal actions. This does not apply to actions necessary to control immediate risks to human life. Whenever a need for post removal action is identified and a written agreement is needed, the agreement will include the terms by which the MPCA will provide for takeover of the post removal action.

G. Enforcement

1. The EPA recognizes that the enforcement process established by the MPCA as authorized by MERLA to secure RP commitments to undertake response actions is essentially the same enforcement process being used by EPA to secure RP cleanups under Section 122 of CERCLA. Attachment 1 describes the status of Minnesota's Superfund program.

The Parties agree that the guiding principle behind successful implementation of the State Superfund program is one of securing RP commitments [in the form of Consent Orders or RP compliance with MPCA-issued Requests for Response Actions (RFRAs)]. Further, the use of Superfund monies (either State or Federal) will be considered at sites where RPs fail to act in accordance with the State cleanup enforcement process or where no financially viable RPs exist or are identifiable.

2. The Parties agree that two-party agreements are the preferred settlement mechanism for NPL sites.

3. The EPA agrees that in order to enhance MPCA implementation of CERCLA activities on NPL sites, EPA will:

a. Maintain flexibility in listing Minnesota proposed and final NPL sites and dollar amounts on yearly SCAP so that CERCLA fund monies are available if the State enforcement process does not result in securing RP cleanups (Consent Orders or RP compliance with MPCA-issued RFRAs) to undertake the appropriate response action(s).

b. Upon RP inquiries regarding EPA's CERCLA role in settlement negotiations on MPCA lead sites, EPA will encourage RPs to execute two-party Consent Orders with the MPCA.

c. When requested, for sites designated in Attachment 2, Support Agency concurrence on Lead Agency prepared RODs will be provided in as timely a manner as possible.

d. The EPA will issue to RPs, upon request of the MPCA, written confirmation that the enforcement principles and State/EPA Superfund Enforcement program approach set forth in this SMOA will be honored. The MPCA is the primary implementor of the Superfund Program in Minnesota.

e. The EPA recognizes that MERLA Section 115B.04 sets forth a strict, joint and several liability standard for releases of hazardous substances. EPA also recognizes that the MPCA first attempts to secure RP commitments to take response actions before utilizing State or Federal Superfund monies.

4. The Lead Agency will prepare or amend site specific Enforcement Site Strategies at the beginning of each federal fiscal year, as specified in Attachment #5 to the SMOA. Enforcement Site Strategies are required at NPL enforcement sites, but not for enforcement sites federally funded through a CA.

5. The Parties agree that response action commitments/settlements reached with RPs will be set forth in enforceable documents. For the purposes of this SMOA, an enforcement document includes execution of a Consent Order or issuance of a RFRA.

The MPCA also utilizes a Commissioner Notice Letter to provide notice to RPs of MPCA's intent to commence the State Superfund process. This is followed by the issuance of a RFRA which may lead to later court action to compel performance of cleanup.

Enforcement actions taken in response to noncompliance with an executed Consent Order or a RFRA will be timely and pursued to resolution in accordance with applicable State or Federal laws, applicable policies and guidelines.

6. For NPL sites, the Lead Agency has primary responsibility for communications with RPs. To the extent practicable, no Support Agency communication with RPs will take place without prior notice to the Lead Agency.

7. For NPL sites, the Lead Agency will consult with the Support Agency prior to the start of negotiations with RPs to discuss goals, starting points and bottom line positions for negotiations. This will ensure a united position.

8. For NPL sites, the Lead Agency will provide a copy of all enforcement documents (i.e., notices, RFRAs, Consent Orders) to the Support Agency prior to issuance to the RPs. The Parties agree to keep draft enforcement documents and related supporting documents confidential until the enforcement documents are issued.

9. The Lead Agency may request assistance from the Support Agency at any time during the enforcement/negotiation process. The Support Agency will provide assistance to the extent practicable. When the MPCA is the Support Agency, it will apply for funding through a CA to provide the assistance.

10. It is the Lead Agency's responsibility to identify and notify all appropriate parties including but not limited to the Support Agency, other government bodies, and known RPs of a planned RI/FS and to determine the willingness and ability of the RP to conduct the RI/FS. The Lead Agency will also send a RD/RA notification letter to the appropriate parties at the completion of an RI/FS.

11. EPA and MPCA agree that at the first Joint Program Review meeting after execution of this SMOA, the MPCA and EPA will address the issue of MPCA consultation, review and approval authorities pursuant to EPA issued 106 administrative orders.

H. Federal Facilities

1. The MPCA is the Lead Agency in drafting and negotiating agreements with Federal agencies responsible for Federal facilities in Minnesota.

The MPCA will utilize the three-party model Interagency Agreement (IAG) for drafting and negotiating Federal facility agreements.

EPA recognizes the Defense and State Memorandum of Agreement (DSMOA) negotiated with the U.S. Department of Defense entered into on June 25, 1991, for the purposes of obtaining Federal funds to cover MPCA administrative costs to oversee the cleanup of Federal facilities in Minnesota.

I. Processes

1. Applicable or Relevent and Appropriate Requirements/To Be Considered (ARARs/TBCs) Process -

The Lead Agency will solicit ARARs/TBCs from the Support Agency for each NPL site in accordance with the time frames and response process phasing as specified in applicable EPA guidance. The MPCA will consult with the EPA during the identification of Federal ARARs/TBCs. The MPCA SRPM and the EPA RRPM will be the contacts for ARARs/TBCs issues.

2. Administrative Record Process -

a. The Lead Agency will be responsible for compiling and maintaining the Administrative Record per the Interagency Superfund Administrative Records Procedures Memorandum.

b. The EPA shall provide guidance on the content of the administrative record.

c. The Lead Agency shall forward a copy of the Administrative Record index to the Support Agency for review/comment.

d. The Lead Agency will certify the completeness of the Administrative Record in the drafted ROD when it is sent to the Support Agency for concurrence.

3. Quality Assurance Project Plan (QAPP) Approval Process

The EPA agrees that the MPCA may approve all QAPPs prepared by RPs for Enforcement Sites.

The Parties agree to pursue all options which minimize the time taken in the QAPP approval process for all Federally-financed projects. Current options include the use of pre-approved Region V QAPPs for drinking water samples, pre-approved Standard Operating Procedures (SOPs) for routine analytical procedures, and amending existing site QAPPs for design or further investigatory work. The EPA is also pursuing direct programmatic approval for all fund-financed work.

J. Consultation, Agreement and Concurrence Process

1. NPL Listing

a. The MPCA will conduct Integrated Assessments (IAs), Focused Site Inspections Prioritization (FSIP), and Expanded Site Inspections (ESI), and submit reports of same to EPA for review and approval.

b. The EPA shall receive concurrence regarding site selection from MPCA prior to Hazard Ranking System (HRS) package preparation and NPL nomination. The EPA will consult with MPCA prior to preparation of a HRS scoring package for a site. The MPCA will provide comments on EPA prepared HRS packages prior to nomination of a site to the NPL.

c. The MPCA will submit to EPA briefing memoranda and a formal letter of nomination for sites prior to preparation of a MPCA HRS package. MPCA will submit for EPA review draft MPCA prepared HRS packages prior to nomination of a site to the NPL.

d. The MPCA will inform EPA of those sites which the MPCA wishes to defer to EPA authority after conclusion of an IA, FSIP and/or ESI.

2. Draft RI/FS and Proposed Plan

a. The Lead Agency will complete a draft RI/FS report (including detailed analysis of alternatives) with a draft of the Proposed Plan for remediation of the site. Reports will be submitted to the Support Agency for review and comment. The Support Agency will review and comment on the reports within 30 working days and submit the comments to the Lead Agency. Upon receipt of Support Agency comments, including legal comments, the Lead Agency will then incorporate the comments into a final RI/FS report and Proposed Plan. Section L is available if there is disagreement.

3. Concurrence on Lead Agency RODs

a. At State-lead fund-financed sites, the Lead Agency will prepare and submit to Support Agency a draft ROD. The Support Agency will then review and comment on the draft ROD within 30 working days. After incorporation of the Support Agency comments and Lead Agency execution of the ROD, it will be submitted to the Support Agency for approval and signature.

b. At State-lead enforcement sites, the Lead Agency will prepare and submit to the Support Agency a draft ROD. The Support Agency will then review and comment on the draft ROD within 30 working days. Upon Lead Agency execution of the ROD, the Lead Agency will submit the ROD to the Support Agency for concurrence and signature.

c. At sites in the Enforcement Remedy Selection Pilot Program, the Lead Agency will prepare and submit to the Support Agency an executed ROD.

4. Five-Year Review

Five year reviews will occur: (1) within five years of the initiation of remedial action construction, (2) within five years after a former review or (3) whenever information becomes available that may change the status of the remedy. The five-year reviews will be a cooperative effort between the Support Agency and Lead Agency and will be conducted in accordance with EPA guidance "Structure and Components of Five Year Reviews, OSWER Directive 9355.7-02." The Lead Agency designation will be based on site histories and resource considerations; Lead Agency designation will be determined during the annual SCAP planning efforts. Support Agency concurrence of the five-year review is required. The five-year review must meet the guidance's three objectives which are: Is the remedy working as envisioned in the ROD? Is the remedy protective in light of any new ARAR's, Regulations, or TBC's? and; Is further work/modification warranted based on implementation of the ROD (i.e., is Operation and Maintenance (O & M) excessive or is the remedy non-functional)? During the five-year review the Parties will consider all reasonable actions to achieve these objectives. State conducted five-year reviews will receive CA funding.

5. NPL Deletion

At all State-lead NPL sites, after construction of the remedial action is completed, the Lead Agency will draft the construction completion reports and provide the Support Agency with draft copies for review and comment. Subsequent to the construction completion report, the following options leading to NPL deletion will occur.

a. For sites that have attained completion (i.e., an implemented remedy that has attained cleanup levels for all exposure pathways and, except for continued treatment, requires no further Superfund responses), the Lead Agency will prepare and submit to the Support Agency the draft delisting package for review and comment. The EPA and MPCA will coordinate the preparation of the final delisting package. EPA will retain final review/approval authority consistent with NPL deletion activities. Support Agency concurrence is required for delisting to occur.

b. For sites that do not have permanent remedies and/or are required to have long-term O & M, delisting packages cannot be prepared until a permanent remedy is in place or the responsibility for monitoring the O & M and conducting the five-year review are assumed under another federal or state program. Once these conditions are met, the Lead Agency will prepare and submit the draft delisting packages to the Support Agency for review and comment. The EPA and MPCA will together coordinate the preparation of the final delisting package. EPA will retain final review/approval authority consistent with NPL deletion activities and the Support Agency concurrence will be obtained.

K. Support Agency Site-Specific Review/Oversight

The Lead Agency will take responsibility for development of technical documents during the RI, FS, RD, and RA at NPL sites. A copy of each response process submittal will be sent to the Support Agency for information and maintenance of the Administrative Record. Attachments 3 and 4 contain a listing of response process submittals which may be generated during the course of a Superfund investigation/response action and designates the base level of oversight for each of the submittals. The definitions of review/oversight activities are as follows:

1. Review and approve -

Site work or the next response process phase does not proceed until the Support Agency reviews and provides written approval.

2. Review and comment -

Site work or the next phase may proceed but the Lead Agency should incorporate Support Agency comments (if any), as appropriate, into the site work.

3. Submit for information/maintenance of Support Agency files -

The Lead Agency submits a document to the Support Agency for information and maintenance of the Support Agency file. This procedure may also be tied to maintenance of the Regional Office copy of the Administrative Record.

It should be noted that the level of review/oversight activity established in this article and Attachments 3 and 4 represents the base level of Support Agency review/oversight. This base level, therefore, could and should be modified under various CAs or SSCs as site specific situations dictate.

L. Resolution of Disputes

In the event of disputes between the Parties concerning the implementation of any provisions of this SMOA or any site-specific response action dispute, the SRPM and ERPM will attempt to resolve such disputes promptly. If disputes cannot be resolved at this level, the dispute will be referred within seven calendar days to the supervisors of these persons for further EPA/MPCA consultation. This supervisory referral and resolution process will continue, if necessary, to the level of MPCA Commissioner and Regional Administrator, EPA, Region V. If agreement still cannot be reached, Region V and MPCA can jointly refer the dispute to the Assistant Administrator for Solid Waste and Emergency Response, who will attempt to resolve the dispute. The EPA will endeavor to reach a compromise before any decision is made by EPA to attempt to assert a management option for this site. The MPCA understands that EPA may take that option and, by this agreement, the MPCA does not waive any rights or responsibilities it has in regard to the specific site. The dispute resolution process may be used for site-specific issues, to the extent it does not conflict with the dispute resolution process specified in a legally binding document to which MPCA is a party, which controls CERCLA activities at a particular site. By its agreement to or use of the dispute resolution process in this SMOA, the MPCA does not waive any rights it may have under CERCLA or other law to seek a judicial resolution of any site-specific dispute between the Parties.

For the State of Minnesota:

for Charles W. Williams, Commissioner
Minnesota Pollution Control Agency

July 25, 1994
Date

For the Environmental Protection Agency:

for Valdas V. Adamkus, Regional Administrator

December 2, 1994
Effective Date